UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY AND SUBSIDIARIES,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case No. 05-11049-RCL |

ANSWER TO COMPLAINT

The United States of America, by its undersigned counsel, answers the Complaint of Liberty Mutual Fire Insurance Company and Subsidiaries ("Fire") as follows:

FIRST AFFIRMATIVE DEFENSE

To the extent that Plaintiff did not make a claim for refund within 2 years of making a tax overpayment, the Plaintiff is not entitled to recover that overpayment.

JURISDICTIONAL AND GENERAL ALLEGATIONS

1.      Plaintiff Fire is a corporation organized under the laws of the State of Massachusetts, with its principal office located at 175 Berkeley Street, Boston, Massachusetts 02117.

**ANSWER:** The United States admits.

2.      Defendant is the United States of America.

**ANSWER:** The United States admits.

3. This action arises under the Internal Revenue Code of 1986 (Title 26, United States Code) and is a suit for the recovery of federal income taxes and related interest erroneously and illegally assessed against and collected from plaintiff for the taxable year ending December 31, 1990 (taxable year 1990).

**ANSWER:** The United States admits this is such a suit but denies the taxes were erroneously or illegally assessed and collected.

4. Jurisdiction is conferred upon the Court by 28 U.S.C. § 1346(a)(1) and plaintiff brings this action in accordance with the requirements of 26 U.S.C. § 7422(a).

**ANSWER:** The United States admits that if and to the extent jurisdiction exists it is under such provisions (but see First Affirmative Defense).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1402(a)(2).

**ANSWER:** The United States admits.

6. This action has been filed within the period of time specified in 26 U.S.C. § 6532(a).

**ANSWER:** The United States admits.

7. Plaintiff has made no transfer or assignment of the claims herein presented or any part thereof and is the owner of the claims.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 7.

8. No action on the claims presented herein has been taken by the Congress of the United States or by any of the departments of the government, other than action by the Treasury Department as hereinafter described.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 8.

9. No other suit or process by plaintiff, or any assignee, is pending on the claims presented herein in any other court.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 9.

Treatment of Salvage and Subrogation Prior to January 1, 1990

10. An insurance company is required to report salvage and subrogation (collectively "Salvage") on its Annual Statement filed with the state insurance department in its state of domicile.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 10. However, the United States acknowledges that many state insurance departments require an insurance company to report salvage and subrogation on it Annual Statement.

11. Prior to January 1, 1990, an insurance company was required to account for Salvage, including amounts to which the company had a current right but had not yet collected ("Salvage Recoverable") on its Annual Statement under the guidelines established by the National Association of Insurance Commissioners ("NAIC"). However, state insurance departments applied no uniform standard for all Salvage.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 11.

12. Prior to January 1, 1990, 26 U.S.C. § 832 (b)(5)(A) required taxpayers, when calculating losses incurred, to reduce losses paid during the year by the increase in the Salvage Recoverable balance for they year (by adding Salvage outstanding at the end of the preceding taxable year and deducting Salvage outstanding at the end of the taxable year).

**ANSWER:** Paragraph 12 is a contention of law and requires no response.

13. Treas. Reg. § 1.832-4, prior to its amendment by T.D. 8171, 1988-1 C.B. 266 (Dec. 30, 1987), provided that the Salvage adjustment to losses paid should include all Salvage in the course of liquidation, but not if excluded by regulations of the insurance department of any state in which the company transacted business.  As a result, for tax purposes insurance companies generally reflected the amount of Salvage as shown on the Annual Statement.

**ANSWER:** The first sentence is a contention of law and requires no response.  The United States is without information sufficient to form a belief as to the truth of the allegation in the second sentence of paragraph 13.

14. Because the method by which Salvage was taken into account on the Annual Statement varied among companies and product liens, prior to January 1, 1990, all insurance companies did not treat all Salvage the same for tax purposes.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15. Some insurance companies took all Salvage into account only when actually recovered and reduced to cash by the insurance company ("Cash Method") in computing losses incurred for tax purposes.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 15.

16. Some companies were permitted to estimate their liability for unpaid losses on the Annual Statement using methods which reflected a reduction of gross losses for estimated Salvage (resulting in unpaid losses net estimated Salvage). As a consequence, this Salvage was reflected on the Annual Statement on an estimated basis ("Estimated Method"). These companies estimated their liability for unpaid losses using the Estimated Method in computing losses incurred for tax purposes.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 16.

17. In other cases, insurance companies took some Salvage into account using the Cash Method and other Salvage using the Estimated Method (by netting estimated Salvage in determining their unpaid losses) when computing losses incurred for tax purposes.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 17.

Plaintiff's Treatment of Salvage

18. On its federal income tax returns for taxable years prior to 1990, plaintiff computed losses incurred using the Estimated Method of accounting for certain Salvage and the Cash Method of accounting for all other Salvage.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 18.

19. Plaintiff's initial determination of the full amount of its Salvage Recoverable at December 31, 1989, was later corrected and increased after plaintiff received final reports of Salvage amounts from mandatory insurance pools in which plaintiff was required to participate.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 19.

20. The amount of plaintiff's Salvage Recoverable at December 31, 1989, as corrected, was $26,526,336. Of this amount, $19,650,029 was reflected on plaintiff's Annual Statement books for 1989 (by netting it in unpaid losses) ("Booked Salvage") and was taken into account for tax purposes for 1989 using the Estimated Method. The balance $6,876,308, was not reflected on plaintiff's Annual Statement books for 1989 ("Non-Booked Salvage"), but would have been recorded for Annual Statement and tax purposes in a later year under the Cash Method.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 20.

21. In computing taxable income for 1989, plaintiff used the amount of Salvage taken into account on its Annual Statements for 1989, as required by Treas. Reg. § 1.832-4(d)(2).

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 21

22. In 1990, section 11305(a) of the Revenue Reconciliation Act of 1990, Pub. L. No. 101-508, 104 Stat. 1388 ("1990 Act") amended 26 U.S.C. § 832(b)(5) to require taxpayers to take all Salvage Recoverable into account using the Estimated Method, effective for taxable years beginning after December 31, 1989.

**ANSWER:** The United States admits that the 1900 Act amended 26 U.S.C. § 832(b)(5) to require taxpayers to take all Salvage Recoverable into account, effective for taxable years beginning after December 31, 1989. The United States denies the remainder of the allegations in paragraph 22.

23. To provide transition relief for taxpayers, section 11305(c)(2) of the 1990 Act provided that the change in law was to be treated as a change in method of accounting and that only 13% of the adjustment otherwise required to be taken into income under 26 U.S.C. § 481 needed to be taken into account. This 26 U.S.C. § adjustment of 13% was to be spread equally over 4 years. Under this transition rule ("Fresh Stat Transition Rule"), the remaining 87% of Salvage Recoverable that otherwise would have been taken into account under 26 U.S.C. § 481 was forgiven and never required to be included in income.

**ANSWER:** Paragraph 23 is a contention of law and requires no response.

24. Section 11305(c)(3) of the 1990 Act provided that any company that took estimated Salvage Recoverable into account in determining losses incurred for a year before 1990 was allowed a "Special Deduction" equal to 87% of the amount of estimated Salvage Recoverable taken into account at the close of 1989, spread equally over 4 years ("Special Deduction Transition Rule").

**ANSWER:** Paragraph 24 is a contention of law and requires no response.

25. The 1990 Act required plaintiff to change its accounting method in 1990 to take all Salvage into account using the Estimated Method. The amount of the 26 U.S.C. § 481 adjustment that was otherwise required (but for the Fresh Start Transition Rule) to be taken into account is the amount of plaintiff's Non-booked Salvage – the amount of Salvage Recoverable at December 31, 1989, which would have been taken into income in 1989 under the Estimated Method, but which was not taken into income in 1989 because plaintiff used the Cash Method with respect to Salvage. (No change was required with respect to Booked Salvage, which plaintiff took into income in 1989 under Estimated Method.)

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 25.

26. Under the Fresh Start Transition Rule, plaintiff reported one-fourth of 13% of its closing 1989 Non-booked Salvage in income on its original federal income tax return for 1990.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 26.

27. Plaintiff's Booked Salvage was the amount of estimated Salvage it took into account in determining losses incurred for the year 1989. Under the Special Deduction Transition Rule plaintiff claimed a Special Deduction of $4,072,002 on its original federal income tax return for 1990.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 27.

28. Because of the lack of final guidance from the Internal Revenue Service ("IRS") concerning the 1990 Act transition rules, plaintiff included in its original 1990 tax return a statement reserving the right to claim different treatment of its Salvage on an amended return.

**ANSWER:** The United States avers that the Plaintiff included a statement regarding the treatment of salvage with its originally filed federal income tax return. The United States denies the remainder of the allegations in paragraph 28.

29. On September 21, 1992, after the due date for the filing of plaintiff's tax return for 1991, the IRS published Rev. Proc. 92-77, 1992-38 I.R.B. 29, which provided guidance for insurers required to include an estimate of Salvage Recoverable in income under the 1990 Act.

**ANSWER:** The United States admits.

30. Rev. Proc. 92-77 allows a taxpayer that took estimate Salvage Recoverable into account on its Annual Statement to gross up the amount of unpaid losses at year-end by the amount of estimated Salvage Recoverable reflected on that Annual Statement as a reduction in unpaid losses. The amount of the gross-up under the Revenue Procedure has the effect of increasing the taxpayer's deduction for losses incurred. If the first year the taxpayer uses this gross-up treatment is 1990, Rev. Proc. 92-77 allows the entire deduction effect of the gross-up to be taken into account in taxable year 1990.

**ANSWER:** Paragraph 30 is the Plaintiff's interpretation of Rev. Proc. 92-77, and, as such, a legal contention that requires no response.

31. Rev. Proc. 92-77 also allows the Fresh Start Transition Rule to be applied to the full amount of Salvage Recoverable, including the portion taken into account on the Annual Statement but reversed by the gross-up.

**ANSWER:** Paragraph 30 is the Plaintiff's interpretation of Rev. Proc. 92-77, and, as such, a legal contention that requires no response.

32. After Rev. Proc. 92-77 was released, plaintiff filed, on September 15, 1993, a request for an affirmative adjustment for taxable year 1990 with respect to the transition treatment of salvage consistent with the new IRS guidance provided by Rev. Proc. 92-77. The affirmative adjustment requested by plaintiff included reversal of the Special Deduction under the Special Deduction Transition Rule and application of the Fresh Start Transition Rule to the full amount of plaintiff's Salvage Recoverable at December 31, 1989. The affirmative adjustment also claimed the gross-up of undiscounted unpaid losses at the end of 1990 for an amount that included Booked Salvage, and the resulting increase in the deduction for losses incurred for 1990.

**ANSWER:** The United States admits that the Plaintiff made a request for affirmative adjustment for the taxable year 1990. The United States is without information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 32.

33. At the same time, Plaintiff also claimed an affirmative adjustment for the increased amount of Booked Salvage attributable to the correction described in paragraph 19.

**ANSWER:** The United States admits that the Plaintiff made a request for affirmative adjustment for the taxable year 1990. The United States is without information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 33.

34. On its timely filed consolidated federal income tax return for taxable year 1990, plaintiff accounted for Salvage using the Estimated Method, as required by the 1990 Act. The 1990 return also reflected application of the Fresh Start Transition Rule (in appropriate part) and the Special Deduction Transition Rule (in appropriate part), and reflected appropriate deductions and income in the amounts alleged above in paragraphs 18 to 33.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 34.

35. On audit, the IRS accepted the corrected amount of plaintiff's year-end 1989 Booked Salvage (described in paragraph 19) and allowed an additional Special Deduction of $288,203 attributed to the correction.

**ANSWER:** The United States is without information sufficient to form a belief as to the truth of the allegations in paragraph 35.

36. On audit, the IRS disallowed the application of Rev. Proc. 92-77 claimed by plaintiff.

**ANSWER:** The United States admits.

37. The IRS erred in disallowing the application of Rev. Proc. 92-77 claimed by plaintiff.

**ANSWER:** The United States denies.

38. On audit, the IRS also disallowed entirely the application of the Fresh Start Transition Rule and required inclusion of 100% of Non-Booked Salvage, instead of one-fourth of 13% of Non-Booked Salvage.

**ANSWER:** The United States without information sufficient to form a belief as to the truth of the allegations in paragraph 38.

39. The IRS erred in disallowing the application of the Fresh Start Transition Rule claimed by plaintiff.

**ANSWER:** The United States denies.

40. There is no authority to support the IRS's position that the full amount of Booked Salvage is to be included in taxable income in 1990.

**ANSWER:** Paragraph 40 is a legal contention that requires no response.

41. Treas. Reg. § 1.832-4(e)(2)(iii), promulgated January 28, 1992, provides that a company that claims a Special Deduction under the Special Deduction Transition Rule must implement the change in method of accounting for estimated Salvage Recoverable for post-1989 taxable years using a "cut-off" method.

**ANSWER:** Paragraph 41 is the Plaintiff's interpretation of Treas. Reg. §1.832-4(e)(2)(iii) and, as such, is a legal contention that requires no response.

42. On audit, the IRS did not apply the cut-off method for Non-Booked Salvage as provided by Treas. Reg. § 1.832-4(e)(2)(iii).

**ANSWER**: The United States without information sufficient to form a belief as to the truth of the allegations in paragraph 42.

43. The IRS erred in not applying the cut-off method for Non-booked Salvage.

**ANSWER:** The United States denies.

44. The IRS abused its discretion in failing to allow plaintiff's refund, including because it failed to allow plaintiff the tax results authorized by Rev. Proc. 92-77, whiling allowing such tax results to plaintiff's competitors and other similarly situated taxpayers.

**ANSWER:** The United States denies.

45. After resolving other issues for 1990 with the Appeals Division of the IRS, on or after November 22, 2002, plaintiff paid $4,433,536 for additional tax and interest proposed by the IRS to be due for 1990.

**ANSWER:** The United States admits.

46. On October 6, 2004, plaintiff sent, by certified mail, claims for refund for taxable year 1990 to the IRS at Andover, Massachusetts and Ogden, Utah, claiming a tax refund due and owing in the amount of $3,486,552, together with erroneously assessed and statutory interest, on the basis that the IRS erroneously adjusted plaintiff's income and disallowed plaintiff's claimed treatment of Salvage under the 1990 Act and Rev. Proc. 92-77.

**ANSWER:** The United States admits that plaintiff sent the claim but denies that the tax or interest was erroneously assessed.

47. The name, address and employer identification number appearing on the claims for refund for taxable year 1990 is:

> Liberty Mutual Fire Insurance Company
> 175 Berkeley Street
> Boston, MA 02117
> EIN: 04-1924000

**ANSWER:** The United States admits.

48. Plaintiff is entitled to recovery of the taxes alleged above in paragraph 34 to 46, and related interest according to law, because it is entitled to the treatment provided by Rev. Proc. 92-77. Plaintiff is permitted to a gross-up of its undiscounted loss reserves at the end of 1990 for an amount that includes the amount of Booked Salvage, resulting in an increase to its deduction for losses incurred. Plaintiff is also permitted to apply the Fresh Start Transition Rule to the entire amount of Salvage Recoverable at December 31, 1989, and include in income only one-fourth of 13% of that amount.

**ANSWER:** The United States denies.

49. In the alternative, plaintiff is entitled, under the 1990 Act, to apply the Fresh Start Transition Rule with respect to its Non-Booked Salvage, together with the Special Deduction with respect to its Booked Salvage. As a result, under this alternative in 1990, plaintiff is entitled to include only one-fourth of 13% of its Non-Booked Salvage in income and receive a Special Deduction equal to one-fourth of 87% of its Booked Salvage.

**ANSWER:** The United States denies.

50. Further in the alternative, plaintiff is entitled to use the cut-off method provided by Treas. Reg. § 1.832-4(e)(2)(iii) for Non-Booked Salvage, together with a Special Deduction with respect to Booked Salvage. As a result, under this alternative in 1990, plaintiff would include in income the amount of Non-Booked Salvage actually received and take a special Deduction equal to one-fourth of 87% of Booked Salvage.

**ANSWER:** The United States denies.

51. For the foregoing reasons, plaintiff overpaid its federal income tax for taxable year 1990 and is entitled to a refund to tax in the amount of $3,486,552, plus assessed interest and statutory interest, or such other amount as required by law.

**ANSWER:** The United States denies.

52. Although repayment has been demanded, no part of such overpaid tax of $3,486,552 or related interest has been credited, remitted, refunded or repaid to plaintiff or to anyone on its account.

**ANSWER:** The United States admits.

WHEREFORE, the United States prays as follows:

1. That the Court deny the relief sought in the Plaintiff's complaint with prejudice; and

2. that the Court award such further relief as the Court deems just.

MICHAEL J. SULLIVAN
United States Attorney

BARBARA HEALY SMITH
Assistant United States Attorney

/s/ Stephen J. Turanchik
_____
STEPHEN J. TURANCHIK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6565
stephen.j.turanchik@usdoj.gov

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing United States' Answer has been made upon the following by depositing a copy in the United States mail, postage prepaid, this 17th day of November, 2005:

>Peter Winslow
>Scribner, Hall & Thompson LLP
>1875 Eye Street, NW
>Washington, DC 20006
>
>John A. Lacaire
>Black, Cetkovic & Whitestone
>200 Berkeley Street, Floor 16
>Boston, MA 02116

>/s/ Stephen J. Turanchik
>_____
>STEPHEN J. TURANCHIK
>Trial Attorney, Tax Division
>U.S. Department of Justice
>Post Office Box 55
>Ben Franklin Station
>Washington, D.C. 20044
>Telephone: (202) 307-6565