UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) ) ) |

Case No. 05-11049-RCL

## JOINT STATEMENT

Counsel for the plaintiff, Liberty Mutual Insurance Company, and counsel for the defendant, the United States of America, submit this Joint Statement pursuant to the Court's November 21, 2005 Notice of Scheduling Conference and Additional Matters, in preparation for the scheduling conference that will take place on January 12, 2006.

(1)     Summary of Positions

Nature of the Action

This action is a federal income tax matter in which the plaintiff seeks a refund of taxes paid for the tax year ending December 31, 1990. There is a companion action, <u>Liberty Mutual Insurance Company v. United States</u>, No. 05-11048-RCL, involving substantially the same issue for the same tax year for an affiliate of the plaintiff. The parties are treating the two actions as consolidated for purposes of settlement, discovery, and disposition.

The plaintiff is an insurance company subject to tax under Part II of Subchapter L of the Internal Revenue Code of 1986 (26 U.S.C. §§ 831-835). Prior to the tax year 1990, insurance

companies subject to tax under Part II of Subchapter L were permitted to treat salvage and subrogation ("salvage") in the computation of losses incurred on insurance policies under 26 U.S.C. § 832 in the same manner in which they reported the salvage on their financial statements ("annual statements") filed with state insurance regulators, on the form approved by the National Association of Insurance Commissioners. Some companies reported losses incurred gross of anticipated salvage on their annual statements; other companies reported losses incurred net of anticipated salvage; depending on the line of business involved. Those companies that reported losses incurred gross of anticipated salvage, used might be called the gross method meaning that they did not recognize the anticipated salvage as an offset to their losses incurred deduction until the salvage was actually received. Companies that reported losses incurred net of anticipated salvage used what might be called the net method, meaning that they offset their losses incurred deduction by an estimate of salvage expected to be received in the future. This case involves transition rules in section 11305(c) of the Omnibus Budget Reconciliation Act of 1990 Act, Pub. L. No. 101-508, 104 Stat. 1388, ("1990 Act") for the treatment of salvage. In the 1990 Act, Congress amended the definition of losses incurred under 26 U.S.C. § 832(b)(5) to require losses incurred to be reduced by estimated salvage regardless of the taxpayer's annual statement treatment, effective for taxable years beginning after December 31, 1989. In other words, the statute required the estimated method of accounting for salvage.

As amended by the 1990 Act, 26 U.S.C. § 832(b)(5) provides that the deduction for losses incurred is required to be computed by adding estimated salvage as of the end of the preceding taxable year and deducting estimated salvage at the end of the taxable year. For taxpayers that previously reported salvage on the gross method, the amendment resulted in a

change in method of accounting. Ordinarily, such a change would require an adjustment to taxable income under 26 U.S.C. § 481 to prevent a permanent exclusion from income of the estimated salvage as of the end of the preceding year. In other words, the salvage was not included in income in pre-1990 tax years when the taxpayer did not account for estimated salvage recovery and will never be included under the new estimated accounting method required by the amendment to 26 U.S.C. § 832(b)(5). Section 11305(c) of the 1990 Act provided special transition rules with respect to the 26 U.S.C. § 481 adjustment, as well as other relevant matters. Under the special transition rule in section 11305(c)(2) of the 1990 Act, taxpayers that previously had reported losses without estimated salvage (gross method) were required to implement a change in method of accounting with an adjustment under 26 U.S.C. § 481 to be spread ratably over four years beginning in the tax year 1990. As indicated above, the adjustment under 26 U.S.C. § 481 for changing from a gross method of accounting for salvage to a net method would require the taxpayer to include in income in the tax year 1990 the entire balance of estimated salvage recoverable as of December 31, 1989, that under the gross method otherwise would have been accounted for in subsequent years, upon receipt, as a reduction of losses incurred. The transition rule, however, provided that the adjustment under 26 U.S.C. § 481 could be spread over four taxable years, and, moreover, the rule provided a fresh start for a portion of the estimated salvage by limiting the adjustment to "only 13 percent of the net amount of adjustments (otherwise required by such section 481...)." This fresh start transitional relief provision amounted to a forgiveness of 87 percent of the December 31, 1989 estimated salvage balance that otherwise would have been required to be included in income under the normal operation of 26 U.S.C. § 481.

With respect to taxpayers that previously anticipated salvage in computing losses incurred (net method), section 11305(c)(3) of the 1990 Act provided a "Special Deduction" to be spread ratably over the four-year period starting in tax year 1990, equal to 87 percent of the discounted amount of estimated salvage as of year-end 1989 (which had already been taken into account under such taxpayers' estimated method for salvage).  In 1992, the IRS published T.D. 8390 amending Treas. Reg. § 1.832-4(d) and Rev. Proc. 92-77, 1992-2-C.B. 454.  As amended, Treas Reg. § 1.832-4(d) clarified that an insurance company that took estimated salvage recoverable into account in determining loss reserves (net method) may gross up the loss reserves for the estimated salvage if the company discloses the amount of salvage to the appropriate state regulatory authority.  In addition, Rev. Proc. 92-77 explained that if a taxpayer grossed up its reserves for a year beginning before January 1, 1993, the taxpayer could make the gross-up adjustment, and thereby increase its deduction for losses incurred, in one year without adjusting the opening reserve.  Under this guidance, the taxpayer is then allowed to apply the fresh start transition rule to the full amount of salvage recoverable, including the portion attributable to the gross-up.

On its annual statement for 1990, the plaintiff anticipated on certain of its lines of businesses salvage, but not all.  At December 31, 1989, the plaintiff had $6,876,308 of anticipated salvage which it had not netted against losses incurred.  It had anticipated and netted salvage against its loss reserves in an amount of $19,650,029 at the same date.  On its tax return for 1990, the plaintiff changed its method of accounting to reflect anticipated salvage on all lines.  For those lines of businesses for which the plaintiff had not anticipated loss reserves on the 1989 annual statement, it included in income $223,480 (one-quarter of 13 percent of $6,876,308), and

excluded the remaining portion, pursuant to section 11305(c)(2) of the 1990 Act. The plaintiff also claimed the Special Deduction pursuant to section 11305(c)(3) of the 1990 Act in the amount of (on its original return) $4,072,002, for salvage it had anticipated on its 1989 annual statement. It disclosed the amount of netted salvage as required by Treas. Reg. § 1.832-4(d)(2). After Rev. Proc. 92-77 was published, the plaintiff filed a request for an affirmative adjustment of the type permitted by the Revenue Procedure to gross up the estimated salvage on the lines with respect to which it had originally reported on the net method.

      The IRS examined the plaintiff's 1990 return. It did not allow the affirmative adjustment for the lines that had originally been reported on the net method as the plaintiff requested. Instead, for the lines reported on the net method, the IRS accepted the plaintiff's original tax return position of allowing the special deduction equal to 87 percent of the percent of the year-end 1989 balance of estimated salvage which had reduced prior years income under the net method, spread ratably over four years beginning in 1990, and, moreover, increased the special deduction in the amount of $288,203, to account for a correction in the balance of estimated salvage. With respect to the lines for which the plaintiff previously had not anticipated salvage. With respect to the lines for which the plaintiff previously had not anticipated salvage, the IRS made an audit adjustment requiring the plaintiff previously had not anticipated salvage, the IRS made an audit adjustment requiring the plaintiff to include in income the full amount of a 26 U.S.C. § 481 adjustment without permitting either the 87 percent exclusion or the four-year spread under the transition rule in section 11305(c)(2) of the 1990 Act, resulting in an increase in tax, which the plaintiff paid in full.

Plaintiff's Position

The plaintiff is entitled to the full benefit of the transitional rules in section 11305 of the 1990 Act, and to the benefits provided to other similarly situated taxpayers under the guidance the IRS has released interpreting the transitional rule.

<u>Gross lines</u> (gross method) - The plaintiff is entitled to a refund based on the unambiguous language of section 11305 of the 1990 Act, which requires that only 13 percent of the 26 U.S.C. § 481 adjustment be taken into account and that only one-fourth of that amount be reported in 1990.

<u>Netted lines</u> (net method) - The plaintiff is entitled to a refund based on a gross-up of reserves as permitted by Treas. Reg. § 1.832-4(d) and Rev. Proc. 92-77. The IRS is bound by its own Revenue Procedure 92-77. Moreover, it is an abuse of discretion for the IRS to fail to apply the Revenue Procedure in these circumstances.

Defendant's Position

The United States disputes that the Plaintiff is entitled to relief under Revenue Procedure 92-77. The United States reserves the right to add additional defenses as upon learning additional facts.

(2)  Discovery Plan

The parties believe this case is suitable for summary judgment. Accordingly, the parties do not believe that a two-phase discovery plan would be appropriate. The parties request that formal discovery commence in ninety (90) days, in order to allow the parties an opportunity to resolve this case. The parties request that a status conference be held following this ninety (90) day period. The parties, moreover, have considered and intend to comply with the obligation to limit discovery as set forth in Fed. R.Civ. P.26(b). The parties propose a discovery period of approximately 120 days. Accordingly, the parties propose to serve all interrogatories, requests for documents, requests for admission, and notices of deposition so that timely responses will be in hand and any examinations by deposition will take place no later than August 15, 2006. The parties reserve the right to examine witnesses by deposition but do not anticipate the need to do so at this time. Additionally, the parties do not anticipate the use of expert witnesses.

(3)  Motions Deadlines

Dispositive Motion - The parties propose deadlines of September 30, 2006, for cross motions for summary judgment, October 31, 2006, for opposition, and November 15, 2006, for replies.

Motion to Consolidate - The parties believes it is in the best interest of judicial economy to consolidate this case administratively with <u>Liberty Mutual Insurance Company v. United States</u>, No. 05-11048-RCL, and intend to file a joint motion.

    Motion to Amend - The parties propose that any motion to amend the pleadings shall be filed no later than July 15, 2006.

(4)    <u>Magistrate Judge</u>

    The parties do not consent to referral of this matter to a United States Magistrate Judge.

(5)    <u>Alternative Dispute Resolution/Settlement</u>

    The plaintiff submitted a settlement offer to the defendant on December 27, 2005, and the parties are hopeful that the case will be settled. The parties do not believe that other methods of alternative dispute resolution set forth in Local Rule 16.4 would be productive in revolving the case.

(6)    <u>Certification Regarding Litigation Budgets</u>

    Certification signed by the parties and counsel are filed contemporaneously with this Joint Statement.

(7)  Agenda for Scheduling Conference

The parties propose the following agenda for the scheduling conference:

- Discussion of the parties' positions regarding the transition rule in dispute.

- Discussion of a potential motion to consolidate the case with Liberty Mutual Fire Insurance Company v. United States, No. 05-11049-RCL.

- Discussion regarding potential settlement of the case without the need for discovery.

- Discussion of the proposed discovery schedule.

- Discussion of the suitability of the case for summary judgement and the desirability for stipulation facts based on the IRS examination of the Plaintiff's tax returns.

Respectfully Submitted:


/s/ Peter H. Winslow – signed with permission
PETER H. WINSLOW
Scribner, Hall & Thompson LLP
1875 Eye Street, NW Suite 1050
Washington, DC 20006
(202) 331-8585
Counsel for Plaintiff
Admitted Pro Hac Vice



/s/ Stephen J. Turanchik
STEPHEN J. TURANCHIK
U.S. Department of Justice
Tax Division, P.O. Box 55
Ben Franklin Station
Washington, DC 20044
(202) 307-6565
Counsel for Defendant

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Joint Statement has been made upon the following by depositing a copy in the United States mail, postage prepaid, and by electronic mail, this 5th day of January, 2006:

PETER H. WINSLOW
Scribner, Hall & Thompson LLP
1875 Eye Street, NW Suite 1050
Washington, DC 20006
smitchell@scribnerhall.com

/s/ Stephen J. Turanchik

STEPHEN J. TURANCHIK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6565